IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERCH TRAFFIC, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 24-cv-12443 |

**COMPLAINT**

Plaintiff Merch Traffic, LLC ("Merch Traffic" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of trademarks licensed by Plaintiff to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other merchandise, using infringing and counterfeit versions of trademarks licensed by Plaintiff (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its licensed trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Merch Traffic, LLC is a Delaware company with its headquarters in New York, New York. Plaintiff operates as a merchandiser, merchandise license agent, and intellectual property enforcement agent with regards to infringing merchandise for the band Fleetwood Mac. Plaintiff is the exclusive licensee for Fleetwood Mac branded merchandise in the United States.

5. Fleetwood Mac is a British-American rock band formed in London in 1967. In addition to two remaining original members, Mike Fleetwood and John McVie, Fleetwood Mac was comprised of several notable musicians including Christine McVie, Lindsay Buckingham, and Stevie Nicks. The band's many iterations lent itself to an exploration of genres such as blues with its *Fleetwood Mac* (1968) and *Mr. Wonderful* (1968) albums, various blends of rock in *Penguin* (1973) and *Mirage* (1982), and pop on *Tango in the Night* (1987). In over fifty years, Fleetwood Mac has released eighteen studio albums, ten live albums, twenty-three compilation albums, one extended play, and sixty-two singles.

6. The band's discography has earned Fleetwood Mac immense recognition the last five decades. In 1975, Fleetwood Mac released its eleventh studio album "*Rumours*" which quickly became the band's most successful album, receiving multi-platinum certifications in the U.S. and abroad. *Rumours* has sold over 40 million copies worldwide since its release in 1977 and has been recognized as one of the most successful and beloved albums in U.S. history. Off the album, *'Dreams'* became the band's only song to peak at number one in the United States and spent twenty-three weeks on the Billboard Hot 100 Chart in 1977. Over forty years later, in

October 2020, *'Rumours'* re-entered the Billboard top 10 due in part to a viral video featuring the song *'Dreams.'*

7. Fleetwood Mac has also earned several accolades, including seven overall Grammy Award nominations between 1978 and 2003. The band was awarded a Grammy Award for Album of the Year (*Rumours*) in 1978 as well as the Grammy Hall of Fame Award in 2003. In 1998, Fleetwood Mac was inducted into the Rock & Roll Hall of Fame.

8. Products sold under the Fleetwood Mac brand include clothing and various accessories. Fleetwood Mac branded products are distributed and sold to consumers throughout the United States, including in Illinois, through the official fleetwoodmac.store webstore, as well as various affiliates.

9. As a result of long-standing use, there are common law rights in the Fleetwood Mac trademarks. The Fleetwood Mac trademarks are registered with the United States Patent and Trademark Office. Plaintiff is the exclusive licensee of Fleetwood Mac branded merchandise in the United States and is authorized by FM Trademarks, LLC to enforce the rights in Fleetwood Mac trademarks, including the following marks which are collectively referred to as the "FLEETWOOD MAC Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK |
|---|---|
| 1,238,825<br>3,066,017<br>4,908,308 | FLEETWOOD MAC |

10. The above U.S. registrations for the FLEETWOOD MAC Trademarks are valid, subsisting, and in full force and effect, and Reg. No. 3,066,017 is incontestable pursuant to 15 U.S.C. § 1065. The registrations for the FLEETWOOD MAC Trademarks constitute *prima*

*facie* evidence of their validity and of the exclusive right to use the FLEETWOOD MAC Trademarks pursuant to 15 U.S.C. § 1057(b). Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the FLEETWOOD MAC Trademarks are conclusive evidence of the validity of the FLEETWOOD MAC Trademarks and of the registrations of the FLEETWOOD MAC Trademarks, of the ownership of the FLEETWOOD MAC Trademarks, and of the exclusive right to use the FLEETWOOD MAC Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the FLEETWOOD MAC Trademarks included in the above table.

11. The FLEETWOOD MAC Trademarks are displayed extensively on Fleetwood Mac products and in marketing and promotional materials. The Fleetwood Mac brand has been extensively promoted and advertised at great expense. In fact, Plaintiff, or third parties on Plaintiff's and Fleetwood Mac's behalf, have expended millions of dollars in advertising, promoting, and marketing featuring the FLEETWOOD MAC Trademarks, as well as significant time and other resources. As a result, products bearing the FLEETWOOD MAC Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

12. The FLEETWOOD MAC Trademarks are distinctive when applied to Fleetwood Mac products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The FLEETWOOD MAC Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the FLEETWOOD MAC Trademarks is of incalculable and inestimable value to Plaintiff.

13. For years, Fleetwood Mac (in partnership with Plaintiff) has operated an e-commerce webstore where it promotes and sells genuine Fleetwood Mac products at fleetwoodmac.store, including apparel and other merchandise. The fleetwoodmac.store webstore features proprietary content, images, and designs exclusive to Fleetwood Mac and Plaintiff.

14. Plaintiff's innovative marketing and product designs, combined with the immense popularity of Fleetwood Mac, have made the FLEETWOOD MAC Trademarks famous marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Fleetwood Mac brand have made the FLEETWOOD MAC Trademarks invaluable assets of Plaintiff.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Fleetwood Mac brand has resulted in significant counterfeiting of FLEETWOOD MAC Trademarks. Consequently, Plaintiff has an anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, Temu, and TikTok, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id.*
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the FLEETWOOD MAC Trademarks, and none of the Defendants are authorized retailers of genuine Fleetwood Mac products.

21. Many Defendants also deceive unknowing consumers by using FLEETWOOD MAC Trademarks without authorization within the content, text, and/or meta tags of their e-

---

[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, supra note 3, at p. 186-87.

commerce stores to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Fleetwood Mac products. Other e-commerce stores operating under the Seller Aliases omit using the FLEETWOOD MAC Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Fleetwood Mac products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that

9

the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the FLEETWOOD MAC Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the FLEETWOOD MAC Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to

cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered FLEETWOOD MAC Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FLEETWOOD MAC Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products sold or marketed under the FLEETWOOD MAC Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the FLEETWOOD MAC Trademarks without Plaintiff's permission.

32. Plaintiff is the exclusive United States licensee of merchandise featuring the FLEETWOOD MAC Trademarks. The United States Registrations for the FLEETWOOD MAC Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the FLEETWOOD MAC Trademarks, and are willfully infringing and intentionally using counterfeits of the FLEETWOOD MAC Trademarks. Defendants' willful, intentional, and unauthorized use of the FLEETWOOD MAC Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the well-known FLEETWOOD MAC Trademarks.

35. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

38. By using the FLEETWOOD MAC Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the FLEETWOOD MAC Trademarks and brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the FLEETWOOD MAC Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Fleetwood Mac product or is not authorized by Plaintiff to be sold in connection with the FLEETWOOD MAC Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Fleetwood Mac product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the FLEETWOOD MAC Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the FLEETWOOD MAC Trademarks and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of the FLEETWOOD MAC Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, Temu, and TikTok (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the FLEETWOOD MAC Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the FLEETWOOD MAC Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the FLEETWOOD MAC Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 4th day of December 2024.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 W. Madison St., Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Merch Traffic, LLC*